GERALDINE FLIPPEN, Plaintiff, *v.* SAMUEL H. MEINHOLD, Defendant.

City Court of New York, New York County, August 7, 1935.

*Bernard H. Sandler,* for the plaintiff.

*Karl G. Kolish,* for the defendant.

WENDEL, J. This is an application by plaintiff for an order directing the defendant and the child of the plaintiff to submit to one or more blood grouping tests, pursuant to section 306-a of the Civil Practice Act.

Plaintiff brings an action to recover damages for breach of contract for the support of her child, of whom defendant is claimed to be the father. Plaintiff seeks by these blood grouping tests to obtain further proof of defendant's paternity.

Previous to the enactment of section 306-a of the Civil Practice Act it had been held that a party to an action could not be compelled to submit to a blood grouping test (*Beuschel* v. *Manowitz*, 241 App. Div. 888, revg. 151 Misc. 899; *Matter of Thomson* v. *Elliott*, 152 id. 188; *Taylor* v. *Diamond*, 241 App. Div. 702.) The evident purpose of the statute was to obviate injustice wherever possible, and this becomes apparent when due consideration is given to the extent to which such tests are of scientific value. These tests may, in some instances, conclusively prove non-paternity; they never establish paternity.

" In illegitimacy proceedings, the tests can be used to exclude but not to prove paternity. Thus, if the mother belongs to group A, the child to group B and the supposed father to group A, the accused man could not be the father of the child, since the child possesses an agglutinogen B which neither of the supposed parents has. On the other hand, if the accused man is found to belong to group B, this would not prove him to be the father of the group B child, since 15 per cent of all men belong to this group and there is a possibility of coincidence. With the aid of the four classic Landsteiner blood groups, one sixth of all falsely accused men can be exonerated. The agglutinogens M and N, discovered by Landsteiner and Levine in 1928, have doubled the number of cases in which an exclusion can be obtained, so that now one out of three falsely accused men can be exonerated " (Journal of American Medical Association, vol. 104, No. 22, p. 2002, June 1, 1935).

If the test shows a negative result it would seem to be conclusive proof of non-paternity, but the positive would simply indicate the possibility of paternity. It would be improper to draw an inference of paternity where merely the possibility is shown; where different inferences may be drawn from a proven fact, no judicial determination may be based thereon.

No case has been found in which blood grouping tests have been deemed admissible for the purpose of establishing paternity. The Legislature must be deemed to have enacted chapters 196, 197 and 198 of the Laws of 1935, with due regard to the scientific facts regarding the probative value of blood grouping tests. Chapter 197 amends the Inferior Criminal Courts Act so as to permit blood grouping tests " on motion of the defendant." The same phrase appears in chapter 198, which amends the Domestic Relations Law. Chapter 196 of the Laws of 1935 (§ 306-a of the Civil Practice Act), with which we are presently concerned, provides that the court shall direct " any party to the action and the child of any such party to submit to one or more blood grouping tests." This section, however, provides for these tests only " Wherever it shall be relevant to the prosecution or defense of an action."

In brief, the blood grouping tests here sought by the plaintiff are not " relevant to the prosecution " of her alleged cause of action, as even a positive result would furnish no satisfactory proof of defendant's paternity. The application therefore does' not fall within the scope of section 306-a of the Civil Practice Act, which was clearly intended to be used as a shield, and not as a sword, and must be denied.

Order signed.