In the Matter of ISAIAS M. ANGARITA, Petitioner, against COURT OF SPECIAL SESSIONS OF THE CITY OF NEW YORK et al., Respondents.

Supreme Court, Special Term, New York County, May 15, 1952.

*Curtis, Mallet-Prevost, Colt & Mosle* for petitioner.

*Denis M. Hurley, Corporation Counsel* (*Arthur J. Goldsmith* and *Sidney B. Schatkin* of counsel), for Court of Special Sessions, respondent.

*James D. C. Murray* for Estrella Serfaty, respondent.

STEUER, J. The petitioner seeks an order in the nature of a writ of prohibition against the Justices of the Court of Special Sessions to prevent them from continuing with certain proceed-

ings now pending in that court. In those proceedings petitioner is charged with being the father of two children borne by the complainant, and the object of the proceeding is to determine that issue and make the disposition called for. The grounds advanced for this court to restrain the Court of Special Sessions is that that court lacks jurisdiction.

The established facts are that the petitioner (defendant in Special Sessions) is a resident and currently in this city. The complainant in Special Sessions is a resident of Venezuela but is now in this city having arrived here shortly before the institution of the filiation proceedings. The children are presently in Canada, though where they reside does not appear.

Due to the extraordinary situation which prevails in proceedings of the kind under discussion, jurisdiction is determined not by one but two statutes. The Domestic Relations Law provides:

" § 122. * * * Complaints may be made in the *county* where the mother or child resides or is found or in the *county* where the putative father resides or is found." (Italics supplied.)

" § 135. * * * It is not a bar to the jurisdiction of the court that the complaining mother or child resides in another *county* or state, if the defendant be a resident of this state." (Italics supplied.)

And the New York City Criminal Courts Act provides: " Section 64. Proceedings may be instituted if the mother or child resides or is found in the City of New York or if the putative father resides or is found in the City of New York."

These provisions are to some extent contradictory. It would appear, if they are read separately, that the residence here of the putative father would be sufficient to confer jurisdiction. But if effect is to be given to section 135 of the Domestic Relations Law, that is not sufficient unless the mother resides in another *county* or State. This section must be read in connection with section 64 of the New York City Criminal Courts Act (*Feyler* v. *Mortimer,* 299 N. Y. 309).

It will be observed that in the two sections conferring jurisdiction (Domestic Relations Law, § 122; N. Y. City Crim. Cts. Act, § 64) the phrase is where the mother " resides or is found ". While there is no authoritative definition of " is found " those words are taken to mean, appears in person before the court. The words are not found in the section which limits jurisdiction (Domestic Relations Law, § 135). The sum total

is that residents of foreign countries do not enjoy the privilege of proceeding in our courts by merely coming here though residents of sister States do. In the *Feyler* case (*supra*) the complainant was a resident of Germany who did not come here and authorized the proceeding by mail. The question of whether such a complainant would be entitled to be heard as coming within the classification of being found here was consequently not before the court. But in construing the relevant statutory provisions the court put the test as regards foreign residents strictly on the basis of residence, presumably because, as pointed out, physical presence was not a ground of exception in the limiting section.

There are two further considerations. If there were an issue of fact as to complainant's residence, this motion would necessarily fail. Substantial proof of residence in Venezuela has been submitted. It has not been denied. In retaining jurisdiction the Court of Special Sessions did not rely on her residence but merely on her presence as being found here.

A more difficult question is whether these facts justify prohibiting a court from proceeding with a matter before it. It is not to be anticipated that a court will exceed its jurisdiction but where it appears that a court has already determined that it has jurisdiction which depends on no question of fact, the remedy is rightfully sought (*People ex rel. Safford* v. *Surrogate's Court*, 229 N. Y. 495). It is no small consideration that a trial which is certain to be attended with a plethora of noxious publicity can be avoided.

Lastly it is urged that a court of equity should not deprive these children of the opportunity of support in the only jurisdiction where it can be obtained. If this means jurisdiction should be conferred where the Legislature did not grant it, the application is made in the wrong forum. If it means that this court should shut its eyes to the lack of jurisdiction for whatever temporary benefit might be afforded, the argument is unconscionable. And if it means that the unfortunate result belies the intention of the Legislature the argument is untenable. Just what is the moral distinction between denying relief to children of a foreign mother who is unable to come here (a result admitted to be the law by all the respondents) and granting it to the offspring of one whose circumstances are such that she is enabled to put in an appearance?

The motion is granted. Settle order.